**Allen Glynn PEEPLES, Appellant.**

v.

**UNITED STATES of America, Appellee.**

**No. 20749.**

United States Court of Appeals Fifth Circuit.

Jan. 28, 1965.

Certiorari Denied April 26, 1965.

See 85 S.Ct. 1362.

Murray L. Williams, Water Valley, Miss., for appellant.

H. M. Ray, U. S. Atty., Thomas G. Lilly, Asst. U. S. Atty., Oxford, Miss., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

CHRISTENBERRY, District Judge:

Appellant prosecutes this appeal from his conviction on an indictment charging him and others with carrying on the business of retail liquor dealer and wilfully failing to pay the special tax as required by law, in violation of 26 U.S. C.A. § 5691(a).[1]  In brief, appellant com—

---

1. The indictment in addition charged appellant and others with unlawful possession of 1½ gallons of untaxed distilled spirits in violation of 26 U.S.C.A. § 5604 (a) (1).  This count, however, was dismissed on motion of the Government prior to trial.

plains that the court below erred in 1) overruling appellant's motion to suppress certain evidence allegedly obtained as a result of an unlawful search, 2) in refusing to order a mistrial as a result of an allegedly prejudicial remark made by the Assistant United States Attorney during his closing argument, and 3) in refusing to give certain jury instructions requested by appellant. Additionally, appellant argues that as a matter of law the evidence adduced at the trial was insufficient to sustain a verdict of guilty.

The only evidence presented at the trial of the case was the testimony of three Government agents, one of whom merely testified that on the date alleged in the indictment appellant had not paid the special tax required for retail liquor dealers. The Government's case rests on the testimony of Agent Mashburn and Investigator Lott of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service. They testified that on the afternoon of November 17, 1962, they drove in a pick-up truck to the home of appellant, located about eighteen miles from Oxford, Mississippi, where, according to various complaints they had received, appellant was operating a retail liquor business. Upon arriving near the house, Lott alighted from the truck and took a position where he could observe the activities around the house. While so situated, within a period of twenty minutes he observed three different vehicles drive into the driveway of the house. On each occasion one or two men or young boys got out of the vehicle and walked to the side door of the house which was located beneath a carport. On one occasion Investigator Lott observed a man walk to the side door and ask a woman, later identified as Janie Wilson, appellant's co-defendant, for two cartons of Schlitz beer. The woman handed the man a package and he asked how much it was; whereupon she replied, "You know how much it is, three dollars." The man then left. In addition, Investigator Lott saw several other persons in the vicinity drinking beer. Agent Mashburn then picked up Investigator Lott in the truck, and the two agents drove to the house, stopped and walked under the carport to the side door of the house. Janie Wilson came to the door, and Agent Mashburn asked her for six cans of Schlitz beer, at which time she turned around, opened a refrigerator, and took out six cans of Schlitz beer, placed them in a paper sack and handed the package to Agent Mashburn out the door. Agent Mashburn testified:

" * * * I asked her the price and she said '$3.00.' At that time I showed her my credentials and identified myself and asked her if she had a retail beer stamp, and she said, 'Yes, sir, I guess so.' And so then I asked her, I said . . . 'Well, do you sell tax paid whiskey?', and she said 'Yes, sir, I do.' She said, 'I sell this beer and the whiskey for Mr. Peeples.' She said, 'It belongs to him,' said 'I just stay out here and sell it for him.'

"Q. Did you ask her for the stamp?

"A. And then I asked her to see the stamp and she said, 'Yes, sir,' said 'come on in'.

"Q. Which stamp are you talking about at this time?

"A. At that time I was talking about the beer stamp and the liquor stamp. So I went in, I went in the kitchen——

"Q. Let me ask you this, I'll interrupt you right here, Mr. Mashburn. She told you that Mr. Peeples had a beer stamp and a liquor stamp, is that right?

"A. She told me that she understood that he had one. She said, 'I understand that he's got it.' So she turned and walked in a room and then came almost immediately back. And when she got back in the kitchen, well, she said, says, 'Mr. Peeples must have the stamp down at the store', and I said, 'Well, I want to check your stock and then I'll go to

the store and see him about the stamp.' "

The agents were shown several bottles of tax paid liquor behind a trap door in the bathroom of the house and two bottles of whiskey and a quantity of beer in the refrigerator. The agents then proceeded to Mr. Peeples' general store about fifteen miles away, where appellant admitted that he had been in the business of selling beer and tax paid whiskey at his house for several months, and that he had no stamp. This, substantially, was the evidence presented to the jury by the Government.

## I

At the trial appellant's counsel moved to suppress all evidence obtained by the agents after their entry under the carport of appellant's house on the ground that such property was within the constitutionally protected curtilege of Appellant's home, and that the agents' intrusion thereon without a search warrant was in violation of appellant's rights under the Fourth Amendment to the United States Constitution. Appellant places great reliance on the fact that the agents had no search warrant and upon the testimony of Agent Mashburn to the effect that at the time the investigation was begun the agents did not have sufficient probable cause to obtain a warrant.

█ We think that the evidence is clear that at the time Agent Mashburn and Investigator Lott entered the carport, there was reasonable cause to believe that the occupant of the house was selling beer. Previous to the entry the agents had the benefit not only of several complaints but of their own observation of the activities around the house, including an actual sale of beer. The agents thus were justified in entering the premises for the purpose of determining whether or not the seller possessed a valid tax stamp.

The law requires that all retail dealers in liquor pay a special tax of $54.00 a year, 26 U.S.C.A. § 5121(a), and all persons are prohibited from engaging in a business subject to the tax until he has paid the special tax, 26 U.S.C.A. § 5142(a). Any person who carries on the business of a retail dealer in liquor and wilfully fails to pay the required special tax is subject to the criminal penalties imposed by 26 U.S.C.A. § 5691(a).

26 U.S.C.A. § 6806(a) provides:

"Every person engaged in any business, avocation, or employment, who is thereby made liable to a special tax, shall place and keep conspicuously in his establishment or place of business all stamps denoting payment of said special tax."

26 U.S.C.A. § 5146(b) states:

"(b) Entry of premises for inspection.—The secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

█ As we view the situation here, the agents had ample evidence that a business subject to regulation was being conducted on the premises at the time they entered the carport for the purpose of determining whether or not the vendor possessed a valid tax stamp; and their entry did not offend or violate any right of privacy of appellant protected by the Fourth Amendment.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is needless to recite here how concerned the courts of this nation are with the recognition and protection of Fourth Amendment rights, and how consistent

they are in demanding strict compliance by federal and state officials.

■ The proscriptions of this amendment, however, are less stringent where the search consists of an attempt by federal officers to inspect public documents or records required to be kept at a place where a regulated business is being conducted. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), rehearing denied, 329 U.S. 824, 67 S.Ct. 107, 91 L.Ed. 700; Hughes v. Johnson, 305 F.2d 67 (9th Cir., 1962). Inspection of places of regulated business under a statute within the legitimate power of Congress does not require compliance with the same standards of conduct generally imposed on law enforcement officials by the Fourth Amendment, Shafer v. United States, 229 F.2d 124 (4th Cir., 1956), cert. denied, 351 U.S. 931, 76 S. Ct. 788, 100 L.Ed. 1460.

In Davis v. United States, supra, federal agents, suspecting that a black market gasoline business was being conducted at a certain service station, made a purchase of gasoline without ration stamps at a price above ceiling. Thereafter, without a warrant, they inspected the tanks on the premises and used some degree of persuasion on the defendant to allow them to inspect his records and stamps. They were finally successful. There the Court held that the documents and records sought were public documents, required by law to be kept, and that the permissible limits of persuasion were not so narrow as where *private* papers are sought. The Court stated: "The demand is one of right". 328 U.S. at 593, 66 S.Ct. at 1261.

Hughes v. Johnson, supra, involved a suit against several federal game wardens by owners of a poultry market for damages allegedly resulting from an arbitrary and unreasonable search of plaintiffs' premises and seizure of their records. The agents entered plaintiffs' place of business for the stated purpose of examining and inspecting the records that plaintiffs were by law required to keep in connection with their possession of migratory birds. Federal regulation provided that the records which the agents sought "shall be produced at any reasonable time for inspection by any officer authorized to enforce this part. * * * *" The Court viewed the problem before it as one arising from an attempt by the agents to reach "public papers as to which the appellees have the right to demand and appellants the duty to produce", and held that the premises involved were "charged with a duty that entry for purposes of inspection be permitted."

Other cases have held that there was no violation of Fourth Amendment rights by the inspection of acreage of a farm under the Agricultural Adjustment Act, Shafer v. United States, supra; or by inspection of the premises and records of a drug manufacturer under the Federal Food, Drug, and Cosmetic Act, United States v. Crescent-Kelvan Co., 164 F.2d 582 (3rd Cir., 1948).

■ There is no question but that Congress in the legitimate exercise of its authority has the right to provide for the keeping and inspection of records and to allow federal agents to enter premises on which a regulated business is being conducted, for the purpose of insuring compliance with the legal requirements.

## II

■ During his argument to the jury at the conclusion of the trial, the Assistant United States Attorney stated:

"Three witnesses took the stand, Mr. Mashburn, Mr. Lott, and Mr. Wright; and they testified *uncontradicted* that they went out there to that residence after having received numerous complaints."

Appellant argues that counsel's use of the word "uncontradicted" amounted to a prejudicial comment on appellant's failure to take the witness stand and testify in his own behalf.

First, it should be noted that the testimony referred to by counsel concerned the fact that the agents went to appellant's home after having received numerous complaints—a fact about which

only the agents could be expected to testify.

Secondly, the trial judge explicitly and correctly charged the jury on the effect of the failure of a defendant to take the witness stand.[2]

Thirdly, we are satisfied that within its context the remark complained of did not necessarily reflect on the failure of the defendants to testify. If, in fact, the testimony of the agents on this point could have been rebutted, there is no sound reason to suppose that only the defendants could have done so. See: Garcia v. United States, 315 F.2d 133 (5th Cir., 1963), cert. denied, 375 U.S. 855, 84 S.Ct. 117, 11 L.Ed.2d 82; Jordan v. United States, 324 F.2d 178 (5th Cir., 1963).

### III

 Appellant complains that the trial judge erred in refusing to instruct the jury that it should not consider any testimony which tended to show that appellant or his co-defendant committed earlier or later offenses similar to the one charged. We think that the trial judge was correct in refusing to so instruct the jury. The requested charge was not only erroneous as a matter of law,[3] but we find no evidence in the record to support it.

Appellant objects also to the refusal of the trial judge to charge the jury that proof of an isolated sale, without more, would not constitute proof that appellant was engaged in the business of a retail liquor dealer.

Here, too, we agree with the trial judge. Not only did the agents observe one sale and participate in another, but the circumstances surrounding the transactions and the admissions made by appellant, obviously accepted by the jury, constituted proof well in excess of an isolated sale. Rood v. United States, 7 F.2d 45 (4th Cir., 1925).

We find that the trial below was free of reversible error and that the evidence presented to the jury was sufficient to support the verdict and the judgment.

The judgment of the District Court is, accordingly,

Affirmed.

---

2. The trial judge charged the jury:

"The law does not compel a defendant to take the witness stand and testify and these defendants elected not to testify, and in doing this they were in the exercise of a constitutional right guaranteed them. You must not penalize them for exercising that right and no presumption of guilt may be raised and no inference of any kind may be drawn from their election not to take the stand and testify."

3. While as a general rule evidence of prior criminal acts similar in nature to the one charged is not admissible, certain clear exceptions exist when such evidence goes to the issues of identity, knowledge or intent. Halfen v. United States, 321 F.2d 556, 558 (5th Cir., 1963).