Commonwealth *v.* Davis, Appellant.

Argued November 8, 1971; reargued November 21, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*W. Donald Sparks,* for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney,

and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, May 23, 1973:

Appellant, Curtis Davis, was arrested in December of 1968 and charged with murder, voluntary manslaughter, involuntary manslaughter and robbery. A timely filed pre-trial motion to suppress evidence was denied. Thereafter, on September 25, 1969, appellant was adjudged guilty, by a jury, of murder, voluntary manslaughter and two counts of robbery. Appellant was sentenced, by the jury, to death on the murder conviction, and from ten to twenty years imprisonment, by the court, on the robbery convictions. Post-trial motions in arrest of judgment and for a new trial were denied. This direct appeal followed. We now reverse and remand for a new trial.

Appellant contends that the assistant district attorney committed reversible error by attempting to create an impermissible adverse inference in the minds of the jurors regarding appellant's exercise of his Fifth Amendment rights at trial.[1] Appellant alleges that this was accomplished by the prosecutor's persistent references in his closing argument, over objection, to the evidence against the defendant being "uncontroverted." Review of the record supports appellant's contention that the prosecution's repeated use of the words "uncontroverted" and "uncontroverted fact" created an adverse inference prohibited by the Fifth Amendment to the United States Constitution,[2] Article 1, §9 of the

---

[1] Appellant also contends that additional errors were committed by the trial court and that certain evidence, allegedly illegally seized, should have been suppressed. Appellant also challenges the legality of his arrest. However, in view of our disposition, we need not decide these issues.

[2] "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U. S. Const. Amend. V.

Pennsylvania Constitution,[3] and the Act of May 23, 1887.[4]

It is well settled that the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489 (1964), forbids either comment by the prosecution on the accused's silence at trial or instructions by the court that such is evidence of guilt. *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229 (1965). "Upon the present record, [we] believe that the prosecutorial comment about the 'uncontradicted' [or 'uncontroverted'] nature of the Commonwealth's case runs directly afoul of the *Griffin* prohibition." *Commonwealth v. Allen,* 445 Pa. 156, 159, 281 A. 2d 634, 635 (1971) (ROBERTS, J., dissenting from an opinionless per curiam affirmance, joined by EAGEN, J., and O'BRIEN, J.).

Here, where appellant neither testified at trial nor offered any other defense, the ". . . prosecutor's statement[s] implied that the . . . [defendant himself was] the only [one] who could and should have denied the charges against [him]. The jury *might reasonably have inferred* from [these] statement[s] that [his] failure to do so was evidence of [his] guilt." *Commonwealth v. Reichard,* 211 Pa. Superior Ct. 55, 60, 233 A. 2d 603, 606 (1967). Such an inference is patently contrary to the mandate of *Griffin,* supra.[5]

---

[3] "[The accused] cannot be compelled to give evidence against himself . . . ." Pa. Const. Art. I, §9.

[4] "Except defendants actually upon trial in a criminal court, any competent witness may be compelled to testify in any proceeding, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to criminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal court, to offer himself as a witness be treated as creating any presumption against him, or be adversely referred to by court or counsel during the trial." P. L. 158, §10, 19 P.S. §631.

[5] "As the Supreme Court stated in *Griffin,* the presumption of innocence in favor of a defendant in a criminal case is seriously

As the First Circuit recently stated in *United States v. Flannery*, 451 F. 2d 880, 881-82 (1971): "... [W]e [have] held that for the government to say, in summation to the jury, that certain of its evidence was 'uncontradicted,' when contradiction would have required the defendant to take the stand, drew attention to his failure to do so, and hence was unconstitutional comment. Desmond v. United States, 1 Cir., 1965, 345 F. 2d 225. We do not adopt the reasoning of those courts which state, as it seems to us, ingenuously, that to say that the government's witnesses' testimony was uncontradicted is simply a statement of historical fact. *There are many 'facts' which are benign in themselves. The difficulty is that such reference, when only the defendant could have contradicted, clearly calls to the jury's mind the fact that he failed to testify.*"[6] (Em-

---

jeopardized by any comment concerning his silence. Realistically, the defendant's words and actions will be viewed with a critical eye if he chooses to testify. 'It is not everyone who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others, and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not everyone, however honest, who would, therefore, willingly be placed on the witness stand.' Wilson v. United States, 149 U.S. 60 at 66 (1893). A defendant may refuse to testify for reasons wholly unrelated to his innocence or guilt. Consequently, permitting comment upon the defendant's failure to testify subjects the accused to the hard choice of testifying or running the risk of a jury's unwarranted inference of guilt from his silence." *Commonwealth v. Reichard*, 211 Pa. Superior Ct. 55, 59-60, 233 A. 2d 603, 605 (1967) (footnotes omitted).

[6] The use of the word "uncontroverted" in the prosecutor's closing argument was error for another reason, since the defendant at trial need not affirmatively deny *any* allegation at all. There is *always* a jury question as to every issue, *except those expressly conceded*, on which the government has the burden. See, e.g., *Minor v. United States*, 445 F. 2d 637 (8th Cir. 1971); *United States v. Alessio*, 439 F. 2d 803 (1st Cir. 1971); *DeCecco v. United States*, 338 F. 2d 797 (1st Cir. 1964).

phasis added) (Footnotes omitted). Accord, *United States v. Handman*, 447 F. 2d 853 (7th Cir. 1971); *United States ex rel. Leak v. Follette*, 418 F. 2d 1266 (2d Cir. 1969), cert. denied, 397 U.S. 1050, 90 S. Ct. 1388; *Rodriguez-Sandoval v. United States*, 409 F. 2d 529 (1st Cir. 1969); *Doty v. United States*, 416 F. 2d 887 (10th Cir. 1968), vacated sub. nom., *Epps v. United States*, 401 U.S. 1006, 91 S. Ct. 1247 (1971); *United States v. Lyon*, 397 F. 2d 505 (7th Cir. 1968), cert. denied, sub. nom., *Lysczyk v. United States*, 393 U.S. 846, 89 S. Ct. 131; *United States v. Parisi*, 365 F. 2d 601, 607-09 (6th Cir. 1966), vacated sub. nom., *O'Brien v. United States*, 386 U.S. 345, 87 S. Ct. 1158 (1967); *Peeples v. United States*, 341 F. 2d 60, 64-65 (5th Cir. 1965), cert. denied, 380 U.S. 988, 85 S. Ct. 1362.

On this record, where appellant did not testify and offered no other witnesses or evidence at trial, it would be an act of sophistry to conclude that the remarks of the assistant district attorney could have been taken as anything other than a reference to the fact that appellant, and appellant alone, failed to rebut the evidence against him. The prosecutor's attempt to have the jury equate appellant's guilt with his silence at trial was improper. Such comments, even by implication, are violative of *Griffin*, supra. See also *Handman*, supra.

Not only were appellant's rights under the United States Constitution violated, but also his rights under Article 1, §9 of the Pennsylvania Constitution, and the Act of May 23, 1887 [7] which implements it. It is well settled that *any* comment by the prosecution or the court violates the Act of 1887 if it ". . . draws attention to or focuses on the fact that no one except the defendant can rebut the Commonwealth's case. . . ."

---

[7] See notes 3 and 4, supra.

*Reichard,* supra at 58, 233 A. 2d at 604. It is obvious, on this record, that the prosecutor's comments clearly did that which is prohibited by the Act. "We think the assistant district attorney went too far, both under the Act of 1887 and under the Fifth Amendment proscription as enunciated in Griffin." *Commonwealth v. Camm,* 443 Pa. 253, 268, 277 A. 2d 325, 333 (1971).

We hold that the prosecutor's comments were error, and also that they were *harmful* error, necessitating the grant of a new trial. On this record, the prosecution's comments cannot be held to be "harmless beyond a reasonable doubt."

Our analysis of the gravity and impact of the error is guided by two general precepts. First, ". . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967). See *Harrington v. California,* 395 U.S. 250, 251, 89 S. Ct. 1726, 1727 (1969); *Schneble v. Florida,* 405 U.S. 427, 92 S. Ct. 1056 (1972). This reasonable doubt standard reflects a fundamental belief that once constitutional error has been established, it is far worse to conclude incorrectly that the error was harmless than it is to conclude incorrectly that the error was reversible. Cf. *In Re Winship,* 397 U.S. 358, 90 S. Ct. 1068 (1970).

The second general precept with which we approach the determination of whether a particular constitutional error was harmless is that the burden is on the Commonwealth to establish that the error was harmless. *Chapman v. California,* supra at 24, 26, 87 S. Ct. at 828, 829; *Fontaine v. California,* 390 U.S. 593, 596, 88 S. Ct. 1229, 1231 (1968). It should be noted that placing the burden on the Commonwealth is in accordance with "the original common-law harmless-error rule [that] put the burden on the beneficiary of the

error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." *Chapman v. California,* supra, 386 U.S. at 18, 20-23, 87 S. Ct. at 828 (citing 1 Wigmore, Evidence, §21 (3d ed. 1940).[8]

Keeping these precepts in mind, we must determine whether "there is a reasonable possibility" that the constitutional error "might have contributed to the conviction." *Chapman v. California,* supra, 386 U.S. at 24, 87 S. Ct. at 828. If there is such a possibility, the constitutional error is reversible. But if there is no reasonable possibility that the constitutional error might have moved "the minds of an average jury"[9] toward conviction, then it can be said that the error was harmless.

Cases subsequent to *Chapman* have established one exception to the general proposition that if there is a reasonable possibility that the constitutional error might have contributed to the conviction, the error cannot be harmless. That exception is presented by those cases where the "properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the . . . [constitutional error] is so insignificant by comparison, that it is clear beyond a reasonable doubt that the . . . [constitutional error] was harmless error." *Schneble v. Florida,* supra at 430, 92 S. Ct. at 1059; see *Harrington v. California,* 395 U.S. 250, 89 S. Ct. 1726 (1969).

It should be emphasized that a conclusion that the properly admitted evidence is "so overwhelming," and the prejudicial effect of the constitutional error is "so

---

[8] It should also be noted that federal standards govern what constitutional error must be considered prejudicial. *Chapman v. California,* 386 U.S. 18, 21, 87 S. Ct. 824, 826-27 (1967).

[9] *Harrington v. California,* 395 U.S. 250, 254, 89 S. Ct. 1726, 1728 (1969).

insignificant" by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly. For the effect of such a conclusion is to affirm a conviction where it is conceded that an error of constitutional proportions contributed in some degree to the conviction. In addition, such a conclusion operates to undermine "the deterrent effect of such cases as *Mapp v. Ohio; Griffin v. California; Miranda v. Arizona; United States v. Wade;* and *Bruton v. United States,* on the actions of both police and prosecutors, not to speak of trial courts. . . ." *Harrington v. California,* supra, 395 U.S. at 255, 89 S. Ct. at 1729 (BRENNAN, J., dissenting) (citations omitted).

Applying these standards to the present case, we do not believe that the Commonwealth has established beyond a reasonable doubt that the constitutional error present in this case was harmless. The Commonwealth, during its closing address to the jury, thoroughly exploited appellant's exercise of his Fifth Amendment right not to take the witness stand. The prosecutor argued that "under the *uncontroverted facts* the Commonwealth has proved beyond a reasonable doubt that this defendant is guilty of murder in the first degree and robbery." (Emphasis added.) The prosecutor also repeatedly used the term "uncontroverted" or "uncontroverted facts" at least three other times in referring to portions of the Commonwealth's evidence.[10]

---

[10] At one point in summation the prosecutor stated: "It is also *uncontroverted* that Curtis Davis received a paper bag from Mr. Darlak and said something, I can't remember the exact word, but it is something like, I am going to give you this, or words to that effect, *and then fired two shots in quick succession.*

"You can find from this series of *uncontroverted facts,* members of the jury, that Mr. Davis, the defendant here, was in fact robbing Mr. Darlak at the time, . . ." Clearly, these statements

This argument was obviously calculated to move the jury toward conviction: "Indeed, the very persistence of the government in making these remarks is proof that it attached much importance to them." *Rodriguez-Sandoval*, supra at 531. We must conclude that there is a reasonable possibility that the prosecutor's unconstitutional argument "might have contributed to the conviction."[11]

We also do not believe that the evidence against appellant in this case can be characterized as "overwhelming." The *only* witness who could definitely identify appellant at the trial had been unable to identify appellant at a pre-trial lineup. One other witness was unable to identify appellant at all. The murder weapon was linked to appellant *only* by showing that it was found at an apartment belonging to a woman described by one witness as appellant's girl friend, an apartment to which appellant had a key and near which appellant's car was observed some two and one-half hours after the shooting. Ownership of the weapon was never proved by the Commonwealth. The only other evidence against appellant was a tan hood and a dark jacket, found at the same apartment, which were by no means unique but which were similar to the hood and jacket which two eyewitnesses described the perpetrator as wearing. Although the case against appellant was reasonably strong, it nevertheless is certainly a case in which "honest, fair-minded jurors might very well have brought in not guilty verdicts."

could only have been made by the prosecutor in the hope that the jury would infer that appellant, by failing to testify, was admitting his guilt.

[11] "In such a case we are unwilling to allow the government to act improperly and then avoid reversal by the unprovable assertion that grievous prejudice probably did not result." *Rodriguez-Sandoval v. United States*, 409 F. 2d 529, 531 (1st Cir. 1969).

*Chapman v. California,* supra, 386 U.S. at 26, 87 S. Ct. at 829.

The judgment of sentence is reversed and a new trial granted.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice JONES dissents.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I cannot agree that the prosecutor's use of the word "uncontroverted" in his closing argument to the jury constituted adverse comment upon appellant's exercise of his Fifth Amendment rights, as interpreted in *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106 (1965).

For the remarks of a prosecuting attorney to be impermissible for this reason, it must appear that "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F. 2d 168, 170 (10th Cir. 1955). The question, therefore, is whether the jury would so understand the use of the word "uncontroverted". The word "controvert" means "to dispute or oppose by reasoning; to deny; contradict." Webster's New International Dictionary of the English Language, 2d Ed. (1942). "Uncontroverted" means, obviously, that something is not disputed or opposed by reasoning, or is not denied, or not contradicted. It is the most natural thing in the world for any lawyer in his summation to point out that salient points of his client's case have not been disputed or denied, or that important testimony has not been contradicted. This is a fact of the case as it then stands; the lawyer is but giving emphasis to what is already known to the fact finder.

To hold that this kind of remark, without more, and particularly without any reference to the refusal

of the defendant to testify or any indication that only the defendant could do the controverting, is an adverse comment on the defendant's exercise of his Fifth Amendment right seems to me to be stretching things unduly. The holding converts the use of a factual, colorless word into a pejorative adverse commentary. To go farther and declare, as does the Court, that the thrice repeated use of "uncontroverted" in a lengthy summation argument "thoroughly exploited" the exercise of the defendant's right not to testify seems to me to be an insupportable extravagance. If, as the Court's opinion states, to view the word uncontroverted thus innocently is an "act of sophistry", so be it.

Contrary to the implication of the majority opinion, the federal courts are far from unanimous in finding error where the prosecutor comments on the uncontroverted nature of the evidence and only the defendant could have contradicted it. The opposite, and in my mind better, view has been expressed at some length by Judge FRIENDLY in *United States ex rel. Leak v. Follette*, 418 F. 2d 1266, 1268 (2d Cir. 1969), cert. denied, 397 U.S. 1050: "Neither the language, the history, nor the policy of the self-incrimination clause affords support for the surprising proposition that in declaring that no person 'shall be compelled in any criminal case to be a witness against himself,' the authors of the Bill of Rights intended to prohibit proper advocacy concerning the strength of the prosecution's case. This is quite different from specific comment on the defendant's failure to take the stand. The remarks of the prosecutor and the judge in Griffin were held to violate the privilege because the California rule permitting them was 'in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to

testify.' 380 U.S. at 613, 85 S. Ct. at 1232. The thought was that 'when the court solemnizes the silence of the accused into evidence against him,' id. at 614, 85 S. Ct. at 1233, the state is in practical effect exercising the compulsion the Fifth Amendment forbids. As against this, presumably no one would argue that the self-incrimination clause in any way inhibits the state's production of evidence, even evidence which no one but the defendant can successfully contradict. If the state is free to do this, it must also be free to engage in normal advocacy so long as it does not point a finger at the accused's remaining silent in the courtroom. It is one thing to prevent the state from making capital of the defendant's invocation of the constitutional privilege but quite another to say that an accused who avails himself of it is entitled to impose on the prosecution shackles that would be unavailable to a man who testifies in his own defense. The Fifth Amendment was not aimed at the kind of 'compulsion' generated by the evidence and fair argument about it. Indeed it was a recognition of the plight of the defendant who was *unable* to take the stand that led to the enactment of statutes by almost every state, beginning with Maine in 1864, and by the United States, Act of March 16, 1878, 20 Stat. 30, now 18 U.S.C. §3481, making him competent to testify on his request; generally, these statutes also provided, in the language of the federal act, that 'his failure to make such request shall not create any presumption against him.' See Reeder, Comment on Failure of Accused to Testify, 31 Mich. L. Rev. 40 (1932)." Accord, *United States v. Lipton,* 467 F. 2d 1161 (2d Cir. 1972), cert. denied, 410 U.S. 927; *United States v. Cox,* 428 F. 2d 683 (7th Cir. 1970), cert. denied, 400 U.S. 881; *Doty v. United States,* 416 F. 2d 887 (10th Cir. 1968), vacated sub. nom.; *Epps v. United States,* 401 U.S. 1006 (1971);

*Peeples v. United States,* 341 F. 2d 60 (5th Cir. 1965), cert. denied, 380 U.S. 988; *Jordan v. United States,* 324 F. 2d 178 (5th Cir. 1963); *Garcia v. United States,* 315 F. 2d 133 (5th Cir. 1963), cert. denied, 375 U.S. 855. See generally Anno., 14 A.L.R. 3d 723 and cases cited therein.[1]

Innocent words can, no doubt, be given evil meanings by the way they are said, the gestures and facial expressions that accompany their utterance, and indeed the entire setting surrounding the speaking. It is, I suppose, at least theoretically possible to commit a *Griffin* violation in such a way, but there would have to be some evidence of the circumstance beyond the innocent spoken word. Here there was none.

While normally my disagreement with the Court's opinion, as above expressed, would cause this opinion to be labelled as a dissent, there is another issue in this case which causes me to agree that a new trial should be awarded. Appellant challenges the introduction into evidence of a hooded jacket and .32 caliber revolver, both seized at his girlfriend's apartment pursuant to a search warrant and identified at trial as belonging to the gunman who murdered Chester Darlak. The warrant was issued on the basis of sworn *oral* and *unrecorded* testimony presented by the police to the magistrate. For reasons set out at length in my dissenting opinion in *Commonwealth v. Milliken,* 450 Pa. 310, 318, 300 A. 2d 78 (1973), it is my belief that such a procedure is violative of both the Fourth and

---

[1] As noted in *United States ex rel. Leak v. Follette,* supra, even courts purporting to follow the rule announced today by the majority have been very resourceful in thinking of persons other than the defendant who could have contradicted the prosecution's evidence. So in the present case, alibi witnesses could have been called to testify that appellant was elsewhere at the time Chester Darlak was shot and killed in his grocery store. See *United States v. McClain,* 469 F. 2d 68 (3d Cir. 1972).

Fourteenth Amendments. See also my dissenting opinion in *Commonwealth v. Bedford & Hughes*, 451 Pa. 325, 304 A. 2d 453 (1973). On this ground alone I concur in the Court's grant of a new trial.