**UNITED STATES of America, Plaintiff,**

v.

**John Joseph DUFFY, d/b/a Duffy's Tavern, Defendant.**

No. 67 Cr. 557.

United States District Court
S. D. New York.

April 10, 1968.

Robert M. Morgenthau, U. S. Atty., for the United States; Jack Kaplan, Asst. U. S. Atty., of counsel.

Max Fruchtman, New York City, for defendant.

WYATT, District Judge.

This is a motion by defendant, presumably under Fed.R.Crim.P. 41(e), for the return of property and its suppression for use as evidence. The property is six bottles containing distilled spirits (hereafter simply "spirits"). The bottles were seized on March 16, 1967 by officers of the Alcohol and Tobacco Tax Division of the Internal Revenue Service; these officers are called "special investigators" by the Service.

Evidence was received at hearings held on March 4 and 8, 1968.

Defendant is the operator of a public bar and grill, called "Duffy's Tavern", located at 4063 Boston Road in the Borough of the Bronx. In his tavern, he sells liquors, including spirits, and therefore must have, and doubtless does have, a license from the State of New York to sell liquor at retail to be consumed on

the premises where sold (N.Y. Alcoholic Beverage Control Law, McKinney's Consol.Laws, c. 3–B, § 64). Defendant is also a "retail dealer in liquors" (hereafter usually "dealer") under 26 U.S.C. § 5122(a) and for the period July 1, 1966–June 30, 1967 paid the special tax levied by 26 U.S.C. § 5121. The Regulations under the Internal Revenue Code of 1954 define "liquor" as spirits, wine or beer. 26 C.F.R. § 194.11.

In the late morning of Thursday, March 16, 1967, two officers of the Internal Revenue Service (Alcohol and Tobacco Tax Division) went into the tavern of defendant which was then open to the public for business. Defendant was behind the bar. The officers identified themselves and stated that they were going to inspect the open bottles of liquor from which sales were being made. One of the officers went behind the bar and began testing open bottles; defendant, on request, produced two unopened bottles for comparison, or control, purposes. The officers found eleven bottles which from field tests then made seemed to them to have contents which were not the same as when the bottles had been originally filled. The officers sealed the eleven bottles in the presence of defendant who put his initials on the seals. They took away these eleven bottles, along with the two control bottles, giving defendant a receipt which defendant also signed, acknowledging the sealing of the bottles in his presence. Later the officers returned seven of the bottles, retaining the six bottles which are the subject of this motion.

The officers had no search warrant and did not arrest defendant when they took the bottles.

An information was filed on June 19, 1967 charging defendant in two counts. The first count charged him with refilling liqour bottles in violation of 26 U.S.C. § 5301(c) (1) and the second count charged him with possession of such bottles in violation of 26 U.S.C. § 5301 (c) (2).

Defendant contends on this motion that the bottles were "illegally seized without warrant" (Fed.R.Crim.P. 41(e) (1)) because the search was "without * * * [the] consent" of defendant. Cited for defendant are Camara v. San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

By way of background, we should examine the federal relationship to spirits.

An important source of revenue to the national government is the excise tax tax levied on spirits; this tax, like others, is administered and enforced by the Secretary of the Treasury (the "Secretary"; 26 U.S.C. § 7801).

For the fiscal year ended June 30, 1967, over three billion dollars was collected by the federal government in excise taxes on spirits, out of a total of about fourteen billion dollars for all excise taxes (Annual Report of Commissioner of Internal Revenue (1967) p. 117).

The tax on spirits is imposed at a specified rate on each "proof gallon" of spirits (26 U.S.C. § 5001(a) (1)) and a "proof gallon" is one which contains 50% of alcohol by volume (26 U.S.C. § 5002 (a) (7) and (8)). Thus, the amount of tax payable depends on the percentage of alcohol in the spirits. The higher the percentage, the higher the tax.

To protect the revenue and to prevent evasion of the tax on spirits, Congress has enacted various laws.

The Secretary of the Treasury is authorized (among other things) to regulate the kind, size, use, etc. of containers for spirits. 26 U.S.C. § 5301(a). The Secretary, in order to identify the source where the original contents were put in liquor bottles, requires (among other things) that there be permanently marked in the bottle the year it was made, the permit number of the maker, and a symbol and number representing the name of the bottler. 26 C.F.R. §§ 175.34, 175.87.

Congress has also provided (26 U.S.C. § 5205) that every bottle of spirits must have a stamp showing "the determination of the tax or indicating compliance" with applicable provisions of law and that the stamp "shall be affixed in such a manner as to be broken when the container [bottle] is opened". By regulation, the Secretary requires that the stamp be affixed when the bottle is first filled or first imported. 26 C.F.R. §§ 201.541, 251.56, 251.110.

A further important protection of the revenue from spirits is the provision (26 U.S.C. § 5301(c)) making it a criminal offense for any seller of spirits to refill a liquor bottle either with "any distilled spirits whatsoever other than those contained in such bottle at the time of stamping" or with "any substance whatsoever" or "in any manner" to "alter or increase any portion of the original contents contained in such bottle at the time of stamping". It is this statute which defendant here is accused of violating.

The importance of this particular law to the revenue has been emphasized in Report No. 2090 of the Committee on Finance of the Senate as follows (3 U. S.Code Cong. and Adm.News 1958, pp. 4562, 4563):

"The prevention of the reuse of liquor bottles or other authorized containers for the packaging of any distilled spirits, or of the alteration of the original contents of liquor bottles or other authorized containers which have been used for the packaging of distilled spirits, is essential for the protection of the revenue since it is in most cases impossible, once the container has been refilled or the original contents thereof altered by the addition of any substance (whether taxable or nontaxable), to establish whether the tax on the contents of such containers has been lawfully determined. * * * The language of this subsection as contained in the House bill and as restated by your committee is intended to obviate any question that its provisions are appli-cable, whether or not the tax has been paid or determined on the distilled spirits used in refilling and whether or not the substance used to alter the original contents is taxable under the internal revenue laws."

There has been for many years a general provision in the law (26 U.S.C. § 7606) authorizing the Secretary or his delegate to enter "any building or place where any articles * * * subject to tax are * * * kept * * * for the purpose of examining said articles * * *". One who "refuses to admit any officer or employee of the Treasury Department" acting under the section just cited or who "refuses" to permit examination of the articles "shall, for every such refusal, forfeit $500." 26 U.S.C. § 7342.

As part of the means of enforcing the prohibition against refilling liquor bottles, Congress in 1958 conferred specific authority on the Secretary or his delegate (26 U.S.C. § 5146(b)) to "enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining * * * any distilled spirits * * * kept or stored by such dealer on such premises". Defendant is clearly a "dealer". 26 U.S.C. § 5112(a). The purpose of this provision was explained in Report No. 2090 of the Committee on Finance of the Senate as follows (3 U.S. Code Cong. and Adm.News 1958, p. 4526; emphasis supplied):

"While existing law (sec. 7606) provides authority for the entry for purposes of inspection of premises where taxable articles are kept, this subsection gives specific authority to the Secretary or his delegate to enter during business hours the premises (including places of storage) of any dealer for the purpose of inspection or examination of any records or documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto, *and of any distilled spirits, wine, or beer kept by such dealer on such premises.* The

purpose of this subsection is to *reaffirm* and clarify the authority of the Secretary or his delegate with regard to the entry of wholesale and retail dealer premises for purposes of inspection."

The two officers who made the inspection here challenged were delegates of the Secretary as the term "delegate" is used in 26 U.S.C. §§ 5146(b) and 7606. See 26 U.S.C. § 7701(a) (12) (A). They thus had specific statutory authority to do exactly what they did.

The present motion must be denied because whatever "search" was made was with the consent of defendant, even accepting his testimony which differed slightly from that of the officers.

Defendant testified that when the officers identified themselves and stated they were going to inspect the open bottles behind the bar, he (defendant) said nothing. He made no protest, objection, or refusal. To his knowledge, there had been several similar inspections in the past without any objection by him.

The officers testified that when they announced that an inspection would be made, defendant, then standing behind the bar, said "go ahead". I accept this testimony but whether accepted or not the result is the same because on the testimony of defendant his conduct amounted to a consent to what was done.

It must be the duty of a "retail dealer in liquors" (26 U.S.C. § 5122) to notify inspecting officers unequivocally if he refuses them access; in the event of such refusal the officers could at least consider the possibility of applying for a search warrant. In the case at bar, they did not do so in justified reliance on the conduct of defendant evidencing consent.

It is thus not necessary to reach the question whether, despite 26 U.S.C. §§ 5146(b) and 7606, a search warrant would now be constitutionally required under *Camara* and *See* to inspect spirits at the place of business of a retail liquor dealer against his will. I venture the opinion that *Camara* and *See* would not apply to the case at bar. No apartment residence is here involved, as in *Camara*, nor locked commercial warehouse, as in *See*. It may also be noted as of importance that defendant must have a license for his bar under the law of New York (Alcoholic Beverage Control Law § 100), that his "retail licensed premises" are "subject to inspection" by state officers whenever open for business (§ 106, subdiv. 15), that he may not keep any spirits "except in the original sealed package" (§ 106, subdiv. 2), that he may not "refill" or "tamper with" the contents of any bottle as received by him (§ 106, subdiv. 2), and that his license may be revoked for any violation of the law, including the refilling of liquor bottles (§ 118; see Yates v. Mulrooney, 245 App.Div. 146, 281 N.Y.S. 216 (4th Dept. 1935)).

Under these circumstances, special weight must be given to the following sentences from See v. Seattle, 387 U.S. at 545–546, 87 S.Ct. at 1741; emphasis supplied:

"We do not in any way imply that *business* premises may not reasonably be inspected in many more situations than private homes, nor do we question such accepted regulatory techniques as *licensing programs* which require inspections prior to operating a business or marketing a product. Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness."

Peoples v. United States, 341 F.2d 60 (5th Cir. 1965) was decided before *Camara* and *See* but an unreported opinion of the District Court for the Northern District of Georgia states that *Camara* and *See* do not weaken the force of the *Peoples* decision. United States v. Sessions, D.C., 283 F.Supp. 746 (Edenfield, J.; January 29, 1968).

The motion is in all respects denied.

So ordered.