UNITED STATES of America

v.

**HOFBRAUHAUS OF HARTFORD, INC., Violet Chapman, Anthony Louis Romano.**

**Crim. No. 12654.**

United States District Court,
D. Connecticut.

April 28, 1970.

David Margolis, Sp. Atty., U. S. Dept. of Justice, Hartford, Conn., for plaintiff.

Igor Sikorsky, Jr., Hartford, Conn., for defendants Hofbrauhaus of Hartford, Inc. and Anthony Louis Romano.

William D. Goodrich, New Haven, Conn., for defendant Violet Chapman.

## RULING ON MOTIONS TO SUPPRESS

BLUMENFELD, District Judge.

Defendants, Hofbrauhaus of Hartford, Inc. (hereinafter Hofbrauhaus), Violet Chapman, and Anthony Romano, move under Fed.R.Crim.P. 41(e) to suppress for use as evidence 15 bottles of alcoholic beverage removed from the premises of Hofbrauhaus on March 21, 1969, and further to suppress all analyses and reports of chemical tests performed upon said bottles and their contents.

The facts in this case have been stipulated. Each of the defendants is charged with four counts of violation of 26 U.S.C. § 5301(c), which makes it a criminal of-

fense for any seller of spirits to refill a liquor bottle either with "any distilled spirits whatsoever other than those contained in such bottle at the time of stamping" or with "any substance whatsoever" or "in any manner" to "alter or increase any portion of the original contents contained in such bottle at the time of stamping."

On March 21, 1969, agents of the Department of the Treasury (Alcohol, Tobacco & Firearms Division) [1] entered the Hofbrauhaus' [2] premises at approximately 1:30 p. m. while it was open for business as a bar and restaurant where liquor and meals were served. The purpose of their visit was to determine whether Hofbrauhaus possessed any liquor bottles that had been refilled or altered, which would constitute a violation of federal tax law, 26 U.S.C. § 5301(c). The agents did not have a warrant to search any part of the premises or to seize any liquor bottles. They informed the bartender of their intention to inspect the bottles of distilled spirits on display at the bar at said premises, and he raised no objection. After conducting

a chemical test of the contents of some of those bottles, the agents seized the particular liquor bottles that are the subject of this motion.[3]

### Discussion

Initially, in light of Mancusi v. De-Forte, 392 U.S. 364, 367–370, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Katz v. United States, 389 U.S. 347, 351–353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); and Jones v. United States, 362 U.S. 257, 266–267, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the government appropriately does not challenge the standing of the defendants to move for suppression of the evidence.

In response to the defendants' contention that the seizure and testing of the 15 liquor bottles and their contents was illegal, the government relies upon statutory authorization for its conduct.[4] These statutes were recently considered by the Supreme Court in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970). In reversing a denial of a motion to suppress the fruits of a *forcible* search and

---

1. The agents who made the inspection here challenged were delegates of the Secretary as the term "delegate" is used in the applicable statutes, 26 U.S.C. §§ 5146 (b), 7606(a). See 26 U.S.C. § 7701(a) (12) (A). They thus had specific statutory authority to do what they did.

2. Hofbrauhaus is classified as a "retail dealer in liquors" under 26 U.S.C. § 5122(a) and for the period July 10, 1968, to June 30, 1969, paid the special tax levied by 26 U.S.C. § 5121.

3. Thereafter, but unrelated to the subject matter of this motion, at approximately 4:00 p. m. of that same day, defendant Romano, the president of Hofbrauhaus, entered the premises and was given the *Miranda* warning. He was advised of the purpose of the agents' search, and asked to open the liquor supply room for inspection. Romano unlocked the door and a visual inspection was made of the bottles in that room without opening or seizing any of them.

The agents also asked defendant Romano's permission to examine the liquor invoices of Hofbrauhaus. Romano opened the locked office and removed the in-

voices for an agent's inspection. They were visually examined, but none were seized.

Finally, the agents requested Romano to sign a receipt for the liquor seized, but Romano refused to sign such a receipt.

4. Section 5146, 26 U.S.C., provides:

"(b) Entry of premises for inspection. The Secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

Section 7606(a), 26 U.S.C., provides:

"The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects."

seizure, the Court said: "Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant." *Id.* at 77, 90 S.Ct. at 777, 25 L.Ed.2d at 65.

This is not a forcible entry case. *See* United States v. Duffy, 282 F.Supp. 777, 780 (S.D.N.Y.1968). Such non-forcible searches and seizures have been upheld in Peeples v. United States, 341 F.2d 60 (5th Cir.), cert. denied, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965); United States v. Duffy, *supra*; United States v. Sessions, 283 F.Supp. 746 (N.D. Ga.1968).

The defendants cite See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); and Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), decided the same day, both of which dealt with the legality of warrantless administrative searches conducted in aid of municipal code enforcement, for the proposition that this was a constitutionally impermissible search and seizure. However, in *Colonnade,* the Supreme Court itself made the distinction that the

> "general rule laid down in See v. City of Seattle, supra, [387 U.S.] at 545 [87 S.Ct. 1740] 'that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure'—is * * * not applicable here." 397 U.S. at 76, 90 S.Ct. at 777, 25 L.Ed.2d at 64.

The Court commented that "[w]here Congress has authorized inspection but made no rules governing the procedure which inspectors must follow, the Fourth Amendment and its various restrictive rules apply." 397 U.S. at 77, 90 S.Ct. at 777, 25 L.Ed.2d at 64.

In *Camara,* the Court noted that the function of the warrant procedures contemplated by the fourth amendment is to assure that when the inspector demands entry,

> "the occupant has [a] way of knowing whether enforcement of the municipal code involved requires inspection of his premises, [a] way of knowing the lawful limits of the inspector's power to search, and [a] way of knowing whether the inspector himself is acting under proper authorization." 387 U.S. at 532, 87 S.Ct. at 1732.

These functions were amply fulfilled in this case.

*Scope of Agents' Authority*

■■ The statutory grants authorizing the administrative searches here, unlike in *Camara* and *See,* were not too broad in scope. Section 503 of the San Francisco City Housing Code, which was the ordinance under consideration in *Camara,* gave city inspectors the power to enter "any building, structure, or premises in the City to perform any duty imposed upon them by the Municipal Code." This included the duty, among others, of determining through periodic inspection whether conditions existed in "residential buildings, dwelling units and neighborhoods" that might be found to be "dangerous, substandard, unsanitary or obsolete and deficient." San Francisco Housing Code § 101; Part III, § 86, San Francisco Municipal Code. As to these municipal ordinances it has been noted:

> "These expansive grants of authority would permit an inspector, unless a warrant was required, to roam at will through any portion of a dwelling house, * * * without the occupant or owner being able to determine the need for the inspection, its purpose and its lawful limits." Colonnade Catering Corp. v. United States, 410 F.2d 197, 201 (2d Cir.1969), rev'd, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

In contrast to such broad delegation of inspection authority, the statutory grants of inspection power under the statutes relied upon here are carefully defined and limited. The sole authority granted is permission, during business

hours, to enter the premises of a dealer in liquor who is subject to a special federal alcohol tax, 26 U.S.C. § 5121(a), for the limited purpose of inspecting, those "records or other documents required to be kept by such dealer under this chapter" and the further limited purpose of inspecting "any distilled spirits, wines, or beer kept or stored by such dealer on such premises," 26 U.S.C. § 5146(b), or to enter "any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects." 26 U.S.C. § 7606(a).[5] The agent is not, by virtue of these provisions, given authority to conduct a general search of the premises; he is limited to the place where the liquor is kept and to inspection of specific objects, including, in this case, the alcoholic beverages. Nor does the statute authorize forcible entries in order to inspect. 26 U.S.C. § 7342. Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60.[6]

### Knowledge of Agents' Authority

■ Under this statutory scheme, the liquor dealer, when confronted with an alcohol tax inspector, can hardly be heard to say that he has "no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization." Camara v. Municipal Court, supra, 387 U.S. at 532, 87 S.Ct. at 1732. Dealers in liquor are engaged in a heavily regulated business. They are usually well aware of the regulations to which they are subject, and are undoubtedly familiar with the nature and limits of the inspector's authority.[7] Cf. Zap v. United States, 328 U.S. 624, 628–629, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). "In fact it is their very knowledge of the possibility of such inspections that make the inspection program an effective means of enforcing the tax law." Colonnade Catering Corp. v. United States, supra, 410 F.2d at 202, rev'd, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

These statutes establish a standard of reasonableness that is clearly and narrowly defined; the purpose is relevant; the scope limited; and all aspects are well known to the operator of the premises being inspected. Under these circumstances, nothing would be served by compelling individualized review by a magistrate.

■ Finally, Congress, in enacting these statutes authorizing warrantless administrative searches, has used its "broad power to design such powers of inspection under the liquor laws as it deems necessary * * *." Colonnade Catering Corp. v. United States, supra, 397 U.S. at 76, 90 S.Ct. at 777, 25 L.Ed. 2d at 64.

The motions to suppress are denied.

---

5. "The purpose of this subsection is to reaffirm and clarify the authority of the Secretary or his delegate with regard to the entry of wholesale and retail dealer premises for purposes of inspection." 3 U.S.Code Cong. & Admn. News 1958, at 4526.

6. When entrance is refused or the way is locked, the agents must consider applying for a search warrant or they must rely on the $500 fine authorized by 26 U.S.C. § 7342. See United States v. Duffy, supra, 282 F.Supp. at 780.

7. The defendant must have a permit for his bar under the law of Connecticut, Conn.Gen.Stats. § 30–22. He may be arrested, without a warrant, if found "in the act of illegally manufacturing or selling alcoholic liquor" and the "liquor, vessels and implements of manufacture or sale" may be seized. Conn.Gen.Stats. § 30–107. "[T]here shall be no advertising, labeling, bottling or canning of alcoholic liquor which, in any way, deceives or tends to deceive a purchaser or consumer of such alcoholic liquor as to the nature, quality or quantity of such liquor * * *." Conn.Gen.Stats. § 30–95. The permit may be revoked for any violation of the liquor law, including the refilling of liquor bottles. Conn.Gen.Stats. § 30–52.