M. Michael Potoker, J.
Defendant, charged with the crime of possession of cigarettes for the purpose of sale for which no New York State tax was paid (Tax Law, § 471, § 481, subd. 2), *2 moves to suppress a warrantless seizure of 1,700 cartons of untaxed cigarettes from his business establishment.
The facts adduced at the pretrial hearing are undisputed. At 12:00 noon on June 28, 1973, George Kydd, an investigator for the New York State Tax Department, Special Investigation Bureau, after receiving certain information from his superiors and accompanied by a fellow officer, went to premises located at 233 Fifth Avenue in Brooklyn, a woman’s hosiery shop, for the purpose of conducting an investigation. Upon entering the shop, he observed three packs of cigarettes lying on the counter bearing a North Carolina seal but no New York State tax stamp.
Officer Kydd testified that he then showed the cigarettes to the defendant and told him that the cigarettes were illegal, and "I told him I would like to have the rest of them.” In response to defendant’s inquiry concerning his identification, Officer Kydd exhibited his shield and told him that they were from the New York State Tax Department. The defendant immediately walked to the rear of the store, unlocked the door leading to another room, and let them in. It was there that the seized items were found and defendant was thereupon arrested.
Defendant contends that the seizure was violative of his constitutional rights under the Fourth Amendment. He points up the fact of the absence of a search warrant (which is conceded), that no voluntary consent was given by him, and that there was no lawful administrative search of the premises since his place of business was not licensed to sell cigarettes.
The law is well established that all warrantless searches are unreasonable and constitutionally prohibited unless shown to be within one of the exceptions to the rule that a search must rest on a valid warrant (Stoner v California, 376 US 483; United States v Jeffers, 342 US 48; Katz v United States, 389 US 347, 357; Coolidge v New Hampshire, 403 US 443, 454-455; Chambers v Maroney, 399 US 42, 51).
The court finds that there was no probable cause to arrest or search based on what the officer knew and had observed up to the time of the search. He was directed to go to the hosiery store to investigate a complaint. His viewing of three packs of untaxed cigarettes on the counter may have aroused his suspicion, but this, in and of itself, did not provide probable cause for arrest at the time, since a person can legally possess *3 two cartons of untaxed cigarettes at any one time (Tax Law, §471-0).
It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent (Schneckloth v Bustamonte, 412 US 218; Davis v United States, 328 US 582, 593-594; Zap v United States, 328 US 624, 630).
The subsequent search can then only be legalized on one of two grounds, namely: (1) was the search authorized under article 20 of the New York State Tax Law; or (2) was it conducted on consent of the defendant?
Section 474 of the Tax Law provides that "the tax commission is hereby authorized to examine the books, papers, invoices and other records of any person in possession, control or occupancy of any premises where cigarettes are placed, stored, sold or offered for sale, and the equipment of any such person pertaining to the stamping, sale and delivery of cigarettes taxable under this article, as well as the stock of cigarettes in any such premises or vehicle. To verify the accuracy of the tax imposed and assessed by this article, each such person is hereby directed and required to give to the tax commission or its duly authorized representative, the means, facilities and opportunity for such examinations as are herein provided for and required.”
Subdivision (a) of section 477 of the Tax Law provides that: "Whenever the tax commission or a police officer * * * shall discover any cigarettes, subject to tax provided by this article, and upon which the tax has not been paid or the stamps affixed as herein required, they are hereby authorized and empowered forthwith to seize and take possession of such cigarettes, together with any vending machine or receptacle in which they are held for sale.”
Administrative searches have been upheld by the courts in several areas including dealers of firearms and liquor (see Colonnade Catering Corp. v United States, 397 US 72 [warrantless inspection of premises licensed to deal in alcohol]; United States v Biswell, 406 US 311 [search of premises licensed to deal in firearms]).
The Supreme Court recently reaffirmed the principle of administrative inspection without a warrant and without traditional probable cause in Biswell (supra). In that case the defendant, a gun dealer, had refused to unlock a storeroom
*4 upon the request of authorized inspectors until shown a copy of the statute authorizing the inspection. The Supreme Court, in upholding the resultant seizure, said (pp. 313-315):
"We had no occasion in See v City of Seattle, 387 US 541 (1967), to consider the reach of the Fourth Amendment with respect to various federal regulatory statutes. In Colonnade Catering Corp. v United States, 397 US 72 (1970), we dealt with the statutory authorization for warrantless inspections of federally licensed dealers in alcoholic beverages. There, federal inspectors, without a warrant and without the owner’s permission, had forcibly entered a locked storeroom and seized illegal liquor. Emphasizing the historically broad authority of the Government to regulate the liquor industry and the approval of similar inspection laws of this kind in Boyd v United States, 116 US 616 (1886), we concluded that Congress had ample power 'to design such powers of inspection under the liquor laws as it deems necessary to. meet the evils at hand.’ 397 US, at 76. We found, however, that Congress had not expressly provided for forcible entry in the absence of a warrant and had instead given Government agents a remedy by making it a criminal offense to refuse admission to the inspectors under 26 USC § 7342.
"Here, the search was not accompanied by any unauthorized force, and if the target of the inspection had been a federally licensed liquor dealer, it is clear under Colonnade that the Fourth Amendment would not bar a seizure of illicit liquor. When the officers asked to inspect respondent’s locked storeroom, they were merely asserting their statutory right, and respondent was on notice as to their identity and the legal basis for their action. Respondent’s submission to lawful authority and his decision to step aside and permit the inspection rather than face a criminal prosecution is analogous to a householder’s acquiescence in a search pursuant to a warrant when the alternative is a possible criminal prosecution for refusing entry or a forcible entry. In neither case does the lawfulness of the search depend on consent; in both, there is lawful authority independent of the will of the householder who might, other things being equal, prefer no search at all * * * In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute.” (Footnotes omitted.)
Section 474 of the Tax Law authorized much the same kind *5 of inspection as the Federal law with respect to liquor taxing and gun control. Such inspection is authorized by a statute which the Legislature was empowered to enact (see United States v Afred M. Lewis, Inc., 431 F2d 303, 306 [9th Cir., 1970]; United States v Del Campo Baking Mfg. Co., 345 F Supp 1371 [D. Del., 1972]; United States v Williams, 322 F Supp 1074 [N. D. Ga., 1971]; United States v Hofbrauhaus of Hartford, 313 F Supp 544 [D. Conn., 1970]).
Defendant disagrees with the People’s contention that section 474 of the Tax Law authorized the seizure of the untaxed cigarettes. He argues that section 474 is applicable only to business firms which are licensed to sell cigarettes and cannot therefore encompass his hosiery shop.
In all of the cases reviewed by the court and in each of the statutes involved, the court finds that administrative searches without warrant were made on premises that were licensed to deal in the item sought to be taxed or controlled, and as a prerequisite to obtaining such license the licensee in essence agrees to such intrusion by an authorized representative of the governmental agency responsible for policing the type of business in question.
The premises involved in this case is a hosiery store which did not sell or purport to sell cigarettes as part of its everyday business. There is no evidence that a sale of cigarettes had ever taken place in the store. No sale was observed by the investigator. What the investigator observed in open view were three packs of cigarettes lying on the counter, which of itself is not indicia of any wrongdoing since a person may legally possess up to two cartons of untaxed cigarettes. This would hardly lead one to reasonably believe that this store was dealing in cigarettes.
Had the officer observed more than two cartons of untaxed cigarettes in open view, he would then have had probable cause to make an arrest and to conduct a further search pursuant to the valid arrest.
This court holds that authorized inspections under section 474 of the State Tax Law apply to such premises where cigarettes are sold whether or not the premises are so licensed. Where premises are licensed to sell cigarettes, a tax investigator is empowered upon inspection to demand any and all records pertaining to the sale or possession of untaxed cigarettes found on the premises. The right of inspection under the Tax Law is no different in the case of a store which *6 sells cigarettes even though not so licensed to do. To do otherwise would create a loophole of escape for law evaders who would even flaunt the sale of untaxed cigarettes in the absence of the fear of administrative inspection.
In cases where nonforcible inspection is authorized, the inspection will be sustained unless there is an affirmative objection to it. That is, the statutory authorization removes the burden of showing that there was consent. Inspections made over specific objections are unconstitutional unless a statute authorizes them (Colonnade Catering Corp. v United States, 397 US 72, supra; inspections where no objection is raised and are nonforcible are lawful, United States v Biswell, 406 US 311 [1972], supra; United States v Alfred M. Lewis, Inc., 431 F2d 303, supra; United States v Williams, 322 F Supp 1074, supra; United States v Hofbrauhaus of Hartford, 313 F Supp 544, supra; United States v Sessions, 283 F Supp 746 [N.D. Ga., 1968]; United States v Duffy, 282 F Supp 777 [S. D. N. Y., 1968]).
In People v Alvino (NYLJ, Oct. 11, 1974, p 19, col. 1), the search of a dwelling pursuant to section 474 was found unreasonable; and the court also found that section 474 does not supersede the Fourth Amendment.
In the case before the court we are dealing with a hosiery shop which did not sell or purport to sell cigarettes. In such circumstances, the tax investigator lacks the statutory authority to inspect the premises and any search made without warrant is violative of defendant’s constitutional rights under the Fourth Amendment.
In the absence of a warrant, statutory authority or probable cause, the search and seizure conducted in the back room can be justified only upon consent. Defendant urges that the totality of the circumstances dictates coercion on the part of the officers, which made his alleged consent involuntary. In effect, defendant argues that it is incredible that he would freely have consented to a search which he knew would disclose incriminating evidence and that therefore his action of consent would be an involuntary submission to authority and insufficient to waive a constitutional right.
This issue was clearly disposed of in United States v Gorman (355 F2d 151, 159) as follows: "Acceptance of this contention would mean that expressions of consent could relieve officers of the need of obtaining a warrant only when the speaker was not aware that the search would disclose damag *7 ing evidence — a fact usually not within the officers’ knowledge. Such a ruling not only would almost destroy the principle permitting a search on consent but would enable experienced criminals to lay traps for officers who, relying on the words of consent, failed to secure a search warrant that would have been theirs for the asking. Where, as here, no force or deception was either used or threatened, we see no reason why a court should disregard a suspect’s expression of consent simply because efficient and lawful investigation and his own attempt to avoid apprehension had produced a situation where he could hardly avoid giving it.” (Footnotes and citations omitted.)
"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.” (Bumper v North Carolina, 391 US 543, 548-549.)
The record discloses that the defendant, after learning the identity of the two Tax Department investigators, proceeded to the rear of his hosiery shop, unlocked a door to another room, and permitted the investigators to enter. Does such conduct constitute consent freely and voluntarily given, or does it constitute an involuntary act on his part subjected by coercion and submission to unlawful authority?
"Where there is coercion there cannot be consent.” (Bumper v North Carolina supra, p 550.)
"A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.” (Bumper v North Carolina, supra, p 549; United States v Elliot, 210 F Supp 357, 360; Ball v Armstrong, 254 Ala 390, 394; Meno v State of Indiana, 197 Ind 16, 24.)
The situation of submission to a warrant can be analogized to submission to statutory authority (United States v Biswell, 406 US 311, 315, supra). In such cases the lawfulness of the search does not depend on consent. But if the authority upon which the search was made (warrant or statute) is declared invalid, then it must be determined whether the consent given was dependent on the apparent lawful authority or if an actual consent existed, independent of the taint of the later determined invalid authority.
The court had declared that section 474 of the Tax Law is *8 inapplicable to the premises in question. Had the defendant been informed by the Tax Department investigators that they desired to conduct an inspection of his premises pursuant to section 474, and he then in reliance thereon opened the back room to them, the search would be invalid, since it represented a consent search founded on unlawful authority. In this case, however, the defendant was not so informed. Thus, there could be no reliance on something of which he knew nothing about, and his consent could not constitute a submission to unlawful authority.
Defendant’s argument that where he is not told that he may refuse the request of Government agents and where the defendant has not been fully advised of his rights any indicia of consent thereafter given is not voluntary consent but merely submission to authority, is overruled by the Supreme Court of the United States in Schneckloth v Bustamonte (412 US 218, 234, supra); "Implicit in all of these cases is the recognition that knowledge of a right to refuse is not a prerequisite of a voluntary consent * * * In short, neither this court’s prior cases, nor the traditional definition of Voluntariness’ requires proof of knowledge of a right to refuse as the sine qua non of an effective consent to search.”
The Supreme Court of California, in an opinion by Justice Traynor, said: "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.” (People v Michael, 45 Cal 2d 751, 753.)
"In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.” (Schneckloth v Bustamonte, 412 US 218, 229.)
In this case the two officers were in plainclothes in the defendant’s store at noontime while the store was open for business. No guns were drawn and there were three customers present. The investigator showed the defendant the unstamped packs and said they were illegal and added, "I would like to have the rest of them.” The defendant was not subjected to "exhaustive questioning” or "persistent demands.” (United States v Thompson, 356 F2d 216, 220, cert den 384 US 964.)
There was no evidence to indicate his will was "overborne” *9 or his "capacity for self-determination critically impaired.” (Bustamonte, supra, p 225.) He had the presence of mind to ask for identification, and, when shown it, he escorted the investigators to the rear of the store and unlocked the back room. The defendant need not have had the positive desire that the search be conducted in order for his consent to be voluntary and effective (United States v Thompson, supra).
A question that still remains to be answered is whether the statement by the investigator, "The cigarettes were illegal,” was intentionally misleading, and if so, was it coercive? Since one can lawfully possess two cartons of untaxed cigarettes (Tax Law, § 471-a) on his person, the investigator’s statement to the defendant was not truly accurate. It does not, however, appear that it was meant to deceive the defendant or coerce his consent to a search. Nor does it appear that such statement was the moving factor in bringing about the consent or that such statement rises to the level of "a pretext for an unjustified police intrusion against which the Fourth Amendment is directed.” (Schneckloth v Bustamonte, supra, p 228.)
In view of the totality of the circumstances in this case, the court finds no evidence that the defendant’s will was overborne, actually or psychologically, by the question of the investigators or that the aura of a coercive governmental atmosphere existed under the circumstances existent in the hosiery store. There is no reason to believe that the response to the investigators’ inquiry was presumptively coerced. Nor is there any evidence of inherently coercive police tactics either from the nature of the questioning or the environment in which it took place. The defendant’s consent to search is therefore deemed to have been made freely and voluntarily and is deemed to be valid. Accordingly, the motion to suppress is denied.
The matter is set down before me for trial on March 12, 1975.