GREENSBORO ELKS LODGE T/A GREENSBORO ELKS LODGE #602, Petitioner Appellee v. NORTH CAROLINA BOARD OF ALCO-HOLIC CONTROL, Respondent Appellant

No. 7510SC557

(Filed 3 December 1975)

1. Intoxicating Liquor § 12; Searches and Seizures § 1— search for ABC violations — permission to enter premises

Local law enforcement officers are not required to request and obtain permission to enter the premises of an alcoholic beverage permittee before entering such premises for the purpose of checking for violations of the ABC laws under the authority of G.S. 18A-20(b).

2. Intoxicating Liquor § 12; Searches and Seizures § 1— suppression of evidence in criminal case — admission in administrative proceeding

A determination in criminal prosecutions in the district court that evidence was illegally seized and was therefore inadmissible did not bar use of the evidence in administrative proceedings to revoke ABC permits.

3. Intoxicating Liquor § 12; Searches and Seizures § 1— ABC permittee — waiver of Fourth Amendment rights — search without warrant

By seeking ABC permits, the permittee waived its Fourth Amendment rights as to searches and seizures to the limited extent of inspection by officers for violations of the State ABC regulations, and evidence of liquor sales and gambling obtained by officers who entered the permittee's premises without a search warrant and without obtaining the permittee's permission was properly admitted in an administrative proceeding to revoke the permittee's ABC permits.

APPEAL by respondent from Alvis, Judge. Judgment entered 25 April 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 17 October 1975.

Petitioner operates the Greensboro Elks Lodge No. 602 in Greensboro and holds a retail malt beverage permit, and unfortified wine permit, a fortified wine permit, a special occasions permit, a social establishment permit, and a restaurants and related places permit from respondent Board of Alcoholic Control. On 30 August 1974, petitioner was notified to appear for a hearing before one of respondent's hearing officers on 19 September 1974 to show cause why its permits should not be revoked or suspended for the following violations of the state alcoholic beverage control laws and/or regulations: (1) selling or allowing sale of tax paid liquor in violation of G.S. 18A-3; and (2) allowing its premises to be used for unlawful purposes in violation of G.S. 18A-43(a), to wit: gambling in violation of

G.S. 14-292 and by keeping on its licensed premises gambling tables used for gambling in violation of G.S. 14-295 and malt beverage regulation No. 28(13). The violations allegedly occurred late on the night of 2 April 1974 and in the early morning hours of 3 April 1974.

Following a hearing, the hearing officer made a report in which he found facts including the following:

On 2 April 1974, at approximately 11:00 p.m., Greensboro Police Officer B. R. Dotson entered respondent's establishment. He purchased two bourbon and water drinks from one Leroy Galloway who was standing behind the bar. Mr. Galloway poured the drinks from a liquor bottle behind the bar and Officer Dotson paid 60 cents for each of the drinks. Dotson sampled the drinks both of which tasted and smelled like liquor. In a room adjoining the bar area, Dotson saw people standing and sitting around tables with dice and playing cards. After entering this room, Dotson observed two dice gambling tables covered with a green cloth. A man was rolling dice onto one of the tables while other people standing around were placing chips on the table. On one table Dotson observed a $100 bill along with dice and chips. A man operating each table would rake in the dice, chips and money after each throw.

Officer H. C. Tysinger entered petitioner's establishment along with Officer Dotson. Tysinger entered the room adjoining the bar area and observed people standing around three tables covered with green felt cloth. He observed playing cards, chips and money on each table and a game of "seven-card stud" in progress at each of the three tables. Tysinger observed several exchanges of money for chips between people sitting at the tables and observed bets made with chips and money at various tables. He also observed a wooden cage located in the room adjoining the bar area and saw two men in the cage receive money in exchange for chips in twenty to twenty-five separate transactions. He observed one instance in which a man approached the cage and exchanged $100 in cash for chips. He observed another transaction where a man approached the cage and exchanged one chip for a one dollar bill.

Tysinger observed another table covered with a green cloth on which a dice gambling game was being played and observed another table at which blackjack was being played. He observed an exchange of chips for money between one of the play-

ers and an operator of the blackjack game. Tysinger also purchased a bourbon and water drink from the bartender for 60 cents, bourbon being poured from a liquor bottle from behind the bar.

The hearing officer concluded that petitioner sold, or allowed to be sold, tax paid whiskey on its premises and allowed its licensed premises to be used for unlawful purposes in violation of G.S. 18A-43(a), namely, by permitting or allowing persons to play at games of chance at which money, property and other things of value were bet and by keeping on its premises gambling tables at which games of chance were being played.

The hearing officer recommended that the permits held by petitioner be suspended for a period of 180 days. Following notice of final administrative decision, respondent entered an order approving and adopting as its own the findings of fact made by the hearing officer and ordered that petitioner's permits be suspended for a period of 120 days effective 2 January 1975.

On 30 December 1974 petitioner filed a petition in the superior court asking that the proceedings before, and order of, respondent be reviewed pursuant to G.S. 143-312, et seq. On the same day, the court entered an order staying respondent's suspension order pending review of same by the court.

On 25 April 1975, following a hearing, the court entered an order containing findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. The Greensboro Elks Lodge is a private club for the use of its members only, said members being issued a card key to be used for entry into the club premises.

2. Prior to April 2, 1974, members of the Greensboro Police Department Vice Squad had received information concerning activities on the premises of the Greensboro Elks Lodge, and, specifically, those officers had received information that on the night of April 2-3 there would be conducted on the premises of the Greensboro Elks Lodge the annual GGO stag party. The officers considered obtaining a search warrant, but did not believe that the information they had received from their informer was sufficient

for them to obtain a search warrant and, accordingly, on the morning of April 2, 1974, Vice Detective B. R. Dotson wrote a memorandum to his commanding officer purporting to document his intention to enter the Elks premises and stating: "As a result of this information, this writer intends to check the above-mentioned establishment on April 2, 1974, with other officers of the Vice Division, under authority given to local police officers in 18-A 20(b) of the Alcoholic Beverage Control laws of North Carolina." This memorandum was stamped on a time recording machine and delivered to the captain of the Greensboro Police Department Vice Division on the morning of April 2, 1974.

3. On the night of April 2-3, 1974, officers of the Greensboro Vice Division assembled on the parking lot of the Elks Lodge and waited for some period of time hoping to find means by which they could gain entry into the premises of the lodge, the doors into the lodge being locked to those seeking entry from the outside. There were signs about the premises indicating that entry was restricted to "members only" and neither of the officers were members of the club. Therefore, they did not possess the key cards necessary to gain entry.

4. Finally, the officers waiting on the parking lot saw a member of the club approach the door and insert his key card into the lock. Two of the officers followed the member into the club through the door which he had just unlocked and, having thus gained entry, those two officers admitted other members of the Greensboro Vice Squad through another door which could not be opened from the outside.

5. Having gained entry as described above, the officers seized certain property and made various arrests of individuals on the premises charging them with liquor and gambling offenses. As appears from the record in this case, the Greensboro Elks Lodge intervened in the criminal actions thus pending and moved to suppress all evidence seized by the officers on the ground that the entry was illegal, constituting an unreasonable search and seizure. Upon the motion of the Elks Lodge, the Honorable Elreta Alexander, Judge of the District Court before whom the criminal actions were pending, by order entered the 2nd day of May, 1974, required return of the property to the Elks Lodge

and suppression of all evidence obtained by the Greensboro Police Officers as a result of said entry.

6. This court finds that the order of the Honorable Elreta Alexander appearing of record was correctly and lawfully entered, and was introduced into evidence at the hearing before the North Carolina Board of Alcoholic Control.

7. All material evidence introduced before Hearing Officer Thomas Whitaker in this case was obtained by the Greensboro Police Officers on the night of April 2-3, 1974, after entry into the club premises in the fashion described above, no other material evidence having been introduced during the proceedings before the North Carolina Board of Alcoholic Control.

8. This court independently finds from the facts appearing of record in this case that entry by the officers into the club premises was not pursuant to any consent or permission granted by the Greensboro Elks Lodge or anyone acting on its behalf and further finds that the Greensboro Police Officers knew that there was no such consent or permission.

Upon the foregoing findings of fact the court enters the following

### CONCLUSIONS OF LAW

1. No statute of North Carolina authorizes officers to enter private premises without a search warrant and without the consent or permission of the proprietor of those premises or those to whom he has delegated such authority. Specifically, this court concludes that the provisions of G.S. Sec. 18A-20 must be construed in *pari materia* with the provisions of G.S. Sec. 18A-19(c) providing that

> Refusal by a permittee or by any employee of a permittee to permit such officers to enter the premises shall be cause for revocation or suspension of the permit of the permittee.

When officers know entry to the premises is not open to the public, as they did in this case, in order to conduct an inspection under G.S. Sec. 18A-20 they must request permission from those in charge of the premises. If per-

mission is refused, G.S. Sec. 18A-19(c) provides for revocation or suspension of the alcoholic beverage permit. This court concludes that the Legislature did not intend to impose a forfeiture of the permittee's Fourth Amendment rights in addition to forfeiture of his alcoholic beverage permits.

2. All of the evidence introduced before the North Carolina Board of Alcoholic Control in this case, except for the permittee's record of no previous violations, the motion of permittee and the order of Judge Alexander, was therefore incompetent evidence and was insufficient predicate for the order entered by the Board on December 16, 1974, suspending the permits for a period of 120 days.

The court reversed the order entered by respondent and directed respondent to refrain from suspending petitioner's permits "by reason of the facts appearing in the record . . . ." Respondent appealed.

*Attorney General Edmisten, by James Wallace, Jr., for the North Carolina Board of Alcoholic Control respondent-appellant.*

*Smith, Moore, Smith, Schell & Hunter, by Jack W. Floyd, for petitioner-appellee.*

BRITT, Judge.

[1] Respondent-appellant contends that the court erred in concluding that applicable statutes require State and local A.B.C. and law enforcement officers to request and obtain permission to enter the premises of a permittee, and that the evidence with respect to selling whiskey and gambling presented to respondent's hearing officer in the case at hand was inadmissible. We think the contention has merit.

G.S. 18A-19(c) reads as follows:

"(c) All State A.B.C. officers shall have authority to investigate the operation of the licensed premises of all persons licensed under this Chapter, to examine the books and records of such licensee, to procure evidence with respect to the violation of this Chapter or any rules and regulations adopted thereunder, and to perform such other duties as the Board may direct. A.B.C. officers shall have the right to enter any licensed premises in the State in

the performance of their duty, at any hour of the day or night. Refusal by a permittee or by any employee of a permittee to permit such officers to enter the premises shall be cause for revocation or suspension of the permit of the permittee."

G.S. 18A-20(b) reads as follows:

"(b) Within their respective jurisdictions, all sheriffs, deputy sheriffs, municipal police, and local A.B.C. officers, as well as rural police and other local law-enforcement officers, shall have authority to investigate the operation of premises licensed under any provision of this Chapter and to *procure evidence* with respect to violations of this Chapter or any rule or regulation promulgated pursuant thereto. *These law-enforcement officers shall have the right to enter the licensed premises in the performance of their duties at any hour of the day or night.*" (Emphasis ours.)

The Twenty-First Amendment to the Federal Constitution redelegates authority for the control and regulation of intoxicating beverages to the states. *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 16 L.Ed. 2d 336, 86 S.Ct. 1254 (1966). It appears that all of the states have established regulatory systems to control the sale and distribution of alcoholic beverages, North Carolina's comprehensive plan being set forth in Chapter 18A of the General Statutes.

Some of the control mechanisms contained in our statutes are provisions for permits and licensing of outlets for distribution of alcoholic beverages. G.S. 18A-19 empowers respondent's agents to investigate facilities of permittees. Mere refusal of entry upon demand for inspection constitutes an adequate ground for revocation of permits under this section.

Recognizing the complexity of the problem and the necessity for effective statewide enforcement, the General Assembly enacted G.S. 18A-20 authorizing local law enforcement agencies to inspect facilities dispensing intoxicating beverages under permit. It appears that G.S. 18A-20(b), by authorizing local officers to enter and inspect the premises of permittees at any hour of the day or night, might afford them greater authority than that given state agents under G.S. 18A-19.

These statutes are aimed at a similar problem. Analogous in function, they are to be construed cumulatively as part of a

regulatory package although not necessarily in *pari materia* as held by the superior court. *Stevenson v. Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). *See, e.g.,* 2A Sutherland Statutory Construction §§ 51.02-51.03 (C. Sands rev. 3d ed. 1973). The language is clear and unambiguous. To engraft the implied demand and refusal provision of G.S. 18A-19(c) onto the broad right of entry and inspection of G.S. 18A-20(b) would, in our opinion, frustrate legislative purpose.

[2] Respondent challenges the superior court's ruling that prior determination of inadmissibility barred use of evidence obtained by Officers Dotson and Tysinger by respondent in administrative proceedings to revoke petitioner's permits. We agree with respondent.

Judge Alexander's grant of petitioner's motion to suppress was not dispositive of the competency of evidence in a subsequent administrative proceeding. *Freeman v. Board of Alcoholic Control*, 264 N.C. 320, 141 S.E. 2d 499 (1965). Thus, we proceed to analyze the competency of the evidence introduced before respondent's hearing officer.

Petitioner relies on the New York case of *Finn's Liquor Shop Inc. v. State Liquor Authority*, 24 N.Y. 2d 647, 301 N.Y.S. 2d 584, 249 N.E. 2d 440 (1969) (2 Judges dissenting), *rehearing denied*, 25 N.Y. 2d 777, 303 N.Y.S. 2d 526, 250 N.E. 2d 583 (1969), *cert. denied,* 396 U.S. 840, 24 L.Ed. 2d 91, 90 S.Ct. 103 (1969). This reliance is misplaced. The opinion in *Finn* involved determination of three license suspension cases consolidated for appeal all of which contained Fourth Amendment infractions inapposite the facts presented by this case. In *Finn*, officers violated the Fourth Amendment rights of defendants by searches which went beyond their statutory authority. In this case there was no ransacking or breaking and entering. Pursuant to G.S. 18A-20, Greensboro police officers had the right to go upon and enter petitioner's premises, at any time day or night and procure evidence of violation of State A.B.C. regulations. Further, in *Finn* Liquor Authority agents were held to be a part of the prosecution function on equal footing with the district attorney's office; therefore, even though not a party to the original proceeding, they were precluded by the prior determination of inadmissibility. Here, neither respondent nor petitioner was a party to the original criminal prosecution.

The sale and distribution of intoxicating spirits is a privilege subject to stringent state sanctions due to its sensitive

nature and high potential for corruption and vice. *Crowley v. Christensen*, 137 U.S. 86, 34 L.Ed. 620, 11 S.Ct. 13 (1890). *Compare, Note, Liquor License-Privilege or Property?*, 40 Notre Dame Law. 203 (1965). This position has been recognized by the United States Supreme Court even where the scope of state regulation impinges upon constitutionally guaranteed freedoms. *California v. La Rue*, 409 U.S. 109, 34 L.Ed. 2d 342, 93 S.Ct. 390 (1972). *See generally*, Kamenshine, *California v. La Rue; the Twenty-First Amendment as a Preferred Power*, 26 Vand. L. Rev. 1035 (1973).

Entertainment regulation aimed at sexually titilating performances has been held valid under the Twenty-First Amendment. *California v. La Rue, supra*. Similar exercises of the police power focusing on obscenity have been felled on First Amendment grounds as barriers to freedom of expression. *Roaden v. Kentucky*, 413 U.S. 496, 37 L.Ed. 2d 757, 93 S.Ct. 2796 (1973). States have acted within the Fourteenth Amendment's equal protection guarantee denying liquor licenses to private clubs precluding Negroes from membership. *B.P.O.E. No. 2043 of Brunswick v. Ingraham*, 297 A. 2d 607 (Me. 1972), *appeal dismissed*, 411 U.S. 924, 36 L.Ed. 2d 386, 93 S.Ct. 1893 (1973), (3 Justices dissenting); *rehearing denied*, 412 U.S. 913, 36 L.Ed. 2d 977, 93 S.Ct. 2288 (1973). *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 32 L.Ed. 2d 627, 92 S.Ct. 1965 (1972).

It has been held that where officers, without a warrant, enter commercial or private premises by breaking locks and tearing down doors, there is a clear violation of Fourth Amendment rights. *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 25 L.Ed. 2d 60, 90 S.Ct. 774 (1970). In this case, however, there was no breaking and entering by the police. There were no violations of petitioner's rights under the Fourth Amendment.

It is recognized that within the Fourth Amendment there are several different gradations of reasonableness. Different standards apply to a home from those applicable to a business or motor vehicle. Commercial premises are covered under the Fourth Amendment. *See v. Seattle*, 387 U.S. 541, 18 L.Ed. 2d 943, 87 S.Ct. 1737 (1967). The context of an administrative inspection or search is such, however, that entry otherwise than by warrant is not per se unconstitutional. *Camara v. Municipal Court*, 387 U.S. 523, 18 L.Ed. 2d 930, 87 S.Ct. 1727 (1967).

While there is a right to require a search warrant, that right arises upon demand for entry and refusal. *Camara v. Municipal Court, supra.*

The sensitive nature of certain trades gives rise to a corresponding state interest in regulating and controlling trade practices. Certainly, this is true where the authority to regulate is delegated to the states under the mandate of constitutional amendment. The United States Supreme Court has distinguished searches of regulated trades, such as the spirit industry.

> "A central difference . . . is that businessmen in such . . . licensed and regulated enterprises accept the burden as well as the benefits of their trade, . . . . The businessman in a regulated industry in effect consents to the restrictions placed upon him." *Almeida-Sanchez v. United States,* 413 U.S. 266, 271, 37 L.Ed. 2d 596, 601, 93 S.Ct. 2535, 2538 (1973).

[3] We are impressed with the logic of the dissenting judges in *Finn,* that by seeking liquor licenses, licensees (here permittees) waive their Fourth Amendment rights and consent to administrative searches. *Finn's Liquor Shop Inc. v. State Liquor Authority,* 24 N.Y. 2d 647, 301 N.Y.S. 2d 584, 595, 249 N.E. 2d 440, 448 (1969) (dissenting opinion). *See, e.g., United States v. Duffy,* 282 F. Supp. 777 (S.D.N.Y. 1968). A similar doctrine of implied consent appears well recognized in this State. *See generally,* G.S. 20-16 (Driver's license suspension); *Honeycutt v. Scheidt,* 254 N.C. 607, 119 S.E. 2d 777 (1961) (Driving privilege held conditional on obeying the law); G.S. 148-42 (Conditional release of inmates by Parole Commission); *State v. Caudle,* 7 N.C. App. 276, 172 S.E. 2d 231 (1970), *rev'd other grounds,* 276 N.C. 550, 173 S.E. 2d 778 (1970) (Sentence suspended on certain conditions). We feel that by seeking a permit, petitioner waived its Fourth Amendment right to the limited extent of inspection incident enforcement of State A.B.C. regulations.

Officers knew with certainty that intoxicating beverages were dispensed under permit at petitioner's lodge hall. They had reason to believe that liquor was being dispensed in violation of the conditions of these permits and that gambling was being allowed on the premises. Under G.S. 18A-20(b) they had a right to go upon and enter petitioner's lodge building at any time day or night in order to inspect for compliance with State

A.B.C. regulations. By virtue of G.S. 18A-43(a) either infraction would be sufficient in and of itself to warrant a revocation of petitioner's permits. Respondent found that petitioner had allowed its premises to be used for gambling as well as selling alcoholic beverages in violation of State A.B.C. regulations. We think the findings are correct and are supported by material and substantial evidence. Where the findings of respondent Board are supported by material and substantial competent evidence as here, they are conclusive on review by the superior court. *Parker v. Board of Alcoholic Control*, 23 N.C. App. 330, 208 S.E. 2d 727 (1974).

By Chapter 316 of the 1973 Session Laws, the General Assembly submitted to a statewide referendum the question of legalizing the sale of whiskey by the drink in North Carolina. In said referendum, held on 6 November 1973, the people of our State voted overwhelmingly against the proposition submitted, thereby establishing the public policy of our State on that question. By virtue of its police powers, the General Assembly, by the enactment of general criminal statutes, particularly G.S. 14-292, et seq., has condemned gambling and the operation of gambling establishments in this jurisdiction. *State ex rel. Taylor v. Carolina Racing Ass'n*, 241 N.C. 80, 84 S.E. 2d 390 (1954); *State v. Felton*, 239 N.C. 575, 80 S.E. 2d 625 (1954). It behooves the courts not to treat lightly public policy duly established.

For the reasons stated, we hold that the superior court erred in entering the order appealed from. The order is vacated and this cause is remanded to the superior court with direction that it enter an order affirming respondent's order suspending petitioner's permits.

Reversed and remanded.

Judges PARKER and CLARK concur.